THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: May 22, 2020



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re:

    Cloud I Q LLC,    Case No. 19-23680-gmh
        Chapter 11

    Debtor in possession.

---

Cloud I Q LLC,

    Plaintiff,

    v.    Adv. Proc. No. 19-02110-gmh

RADAR_Apps, Inc., et al.,

    Defendants.

---

**DECISION AND ORDER**

---

    Cloud I Q LLC, the debtor in possession in the underlying case under chapter 11 of the Bankruptcy Code, brought this adversary proceeding against various entities and individuals. In the operative, second amended complaint, Cloud seeks to compel one of the defendants, MIGO IQ Inc., to pay a debt allegedly owed on a convertible

promissory note, pursuant to 11 U.S.C. §542(b), and asserts against MIGO and the other defendants claims for breach of contract and fraud, among other things.

The facts alleged in the second amended complaint concern debris cleanup and removal work that Cloud agreed to perform for MIGO pursuant to contracts between municipalities in Puerto Rico and ECO IQ LLC, a joint venture of MIGO and Synergy, LLC, another defendant, in the wake of Hurricane Maria. The complaint also alleges that MIGO borrowed millions of dollars from Cloud to fund its operations, a debt later memorialized in a note, but that MIGO failed to pay on the debt, and that two of MIGO's officers, Jonathan Kotthoff and Alan Debolin, defrauded Cloud into spending millions of dollars transporting equipment to Puerto Rico and performing millions of dollars' worth of work for which it was never compensated.

Synergy and the so-called MIGO defendants—MIGO, Kotthoff, and Debolin, as well as "RADAR_Apps, Inc.", which is the same entity as MIGO, according to records on file with the Government of Puerto Rico, see *MIGO IQ INC.*, Registry of Corps. & Entities, https://prcorpfiling.f1hst.com/CorpInfo/CorporationInfo.aspx?c=345361-111 (select "Articles") (last visited May 20, 2020)—filed motions to dismiss various claims against them for failure to state a claim upon which relief can be granted, based on forum-selection clauses in pertinent contracts, and for failure to join one or more required parties; for mandatory abstention; and for a change of venue to the U.S. District Court for the District of Puerto Rico. This ruling adjudicates those motions.

**I**

A motion to dismiss for failure to state a claim upon which relief can be granted is a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), which applies in adversary proceedings, like this one. Fed. R. Bankr. P. 7012(b). Such a motion "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must

provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "While all well-pled facts are taken as true and viewed in a light most favorable to the plaintiff, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (alteration in original) (citation omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 742–43 (7th Cir. 2010)).

## A

Synergy moves to dismiss the third claim for relief in the second amended complaint to the extent that Cloud seeks a finding that MIGO is an alter ego of Synergy such that Synergy is liable on Cloud's claims against MIGO. Synergy asserts that the allegations against it with respect to this claim are threadbare and amount to a mere recitation of the elements of an alter-ego claim. Cloud argues, to the contrary, that the complaint alleges Synergy's direct involvement in a scheme to use MIGO to defraud Cloud, which is sufficient to state a plausible claim that MIGO is Synergy's alter ego.

Cloud's alter-ego claim against Synergy is unusual in at least one respect: The alter-ego doctrine is ordinarily applied to overcome the presumption that "legal entities [are] separate from their officers, directors, and shareholders." See *Situ v. O'Neill*, 124 F. Supp. 3d 34, 50 (D.P.R. 2015). In other words, an alter-ego claim is typically a means of "piercing the corporate veil" to impose liability on those who formally manage or own an entity and who would otherwise enjoy "the fiction of corporate entity and limited responsibility" for the entity's liabilities. See *id*. Here, Cloud does not allege that Synergy has any formal role in the management of MIGO or that it somehow owns MIGO. Instead, Cloud alleges that Synergy and others used MIGO as a shell to avoid liability for defrauding Cloud.

Still, "[t]he legal standard for when it is proper to pierce the corporate veil is notably imprecise and fact-intensive." *Crane v. Green & Freedman Baking Co.*, 134 F.3d 17,

21 (1st Cir. 1998). As such, the standard may be satisfied in myriad circumstances. The fact that Synergy is not an officer, director, or shareholder of MIGO does not mean that it cannot be held liable for MIGO's acts if it nevertheless, somehow used MIGO "as a mere instrumentality or alter ego and disregarded corporate formalities." *Fletcher Cyclopedia of the Law of Corporations* §41.10 (West 2020) [hereinafter *Fletcher*].

Whatever its outer bounds, under Puerto Rico law, the alter-ego doctrine applies only where there is "a lack of adequate separation" between an entity or individual and its alleged alter ego. *Colón v. Blades*, 914 F. Supp. 2d 181, 192 (D.P.R. 2011); see also *Fletcher* §41.10 ("The alter ego theory applies when there is such unity between a corporation and an individual that the separateness of the corporation has ceased. . . . One rationale behind the theory is that if the shareholders or the corporations themselves disregard the proper formalities of a corporation, then the law will do likewise as necessary to protect individual and corporate creditors."). Various factors may indicate this requisite lack of separation, including "the lack of corporate records" and "the nonobservance of corporate formalities". *Colón*, 914 F. Supp. 2d at 192 (quoting *Dep't de Asuntos del Consumidor v. Alturas de Fla. Dev. Corp.*, 132 P.R. Dec. 905, 928 n.3 (1993)).

The factual allegations in Cloud's second amended complaint do not plausibly suggest a lack of adequate separation between Synergy and MIGO. In fact, the well-pleaded facts reveal little more of even arguable relevance than that (1) Synergy and MIGO (then RADAR_Apps, Inc.) were the founding members of a third entity, ECO IQ LLC, which is also a defendant in this proceeding, and (2) Cloud marked its equipment with logos and signage of Synergy, MIGO, and ECO when performing debris removal and cleanup services, as instructed. These allegations do not "allow[] the court to draw the reasonable inference that" MIGO and Synergy are inadequately separated for purposes of the alter-ego doctrine. See *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). To the contrary, even construed in Cloud's favor, the relevant allegations suggest that Synergy and MIGO were discrete entities that consistently operated as such even when cooperating on a joint venture.

The thrust of Cloud's argument to the contrary is that, as alleged in the complaint, Synergy and MIGO's joint venture was a "fraudulent scheme". See ECF No. 86, at 30; see also ECF No. 64, at 29, ¶101 (alleging that "Synergy was . . . aware of and complicit in [a] scheme" masterminded by Kotthoff "to defraud Cloud"). Whether that is true, and assuming for present purposes that it is, that Synergy and MIGO both participated in a scheme to defraud Cloud does nothing to show that Synergy used MIGO as a mere instrumentality to carry out that scheme and avoid liability to Cloud for it or that the two companies were not adequately separated for alter-ego doctrine purposes. At most, the allegations suggest that Synergy and MIGO carried out their scheme as distinct, if collusive, entities.

Cloud bears the burden of showing that the well-pleaded facts in its operative, second amended complaint give rise to a plausible (not merely possible) inference that MIGO is Synergy's alter ego. It has not done that. Therefore, Synergy's motion to dismiss the third claim for relief is granted, and that claim is dismissed as to Synergy.

B

The MIGO defendants move to dismiss the third claim for relief in the second amended complaint to the extent that Cloud seeks a finding that MIGO is an alter ego of each of the other MIGO defendants such that they are liable on Cloud's claims against MIGO. MIGO cannot be its own alter ego (and the third claim for relief was not asserted against it), and the same goes for RADAR_Apps Inc., which, as noted above, is the same legal entity as MIGO, under a prior name, according to corporate records on file with the Government of Puerto Rico. Consequently, the MIGO defendants, in effect, seek to

dismiss this claim only to the extent that Cloud seeks a finding that MIGO is an alter ego of Kotthoff or Debolin, or both.

The second amended complaint alleges that Kotthoff and Debolin are officers of MIGO (respectively its CEO and Vice President of Business Development). ECF No. 64, at 4, ¶¶5–6. The complaint then alleges "numerous material misrepresentations and false promises" on behalf of MIGO by Kotthoff and Debolin, amounting to "what appears in sum to have been a scheme to defraud Cloud" that started as early as October 2017, the month before Cloud was formed, and continued through April 2018. See *id.* at 5–6, 10 & 29, ¶¶14, 31 & 100–101. The complaint describes MIGO as "thinly capitalized", *id.* at 33, ¶124, alleging, among other things, that Kotthoff represented that MIGO lacked both access to the funds necessary to cover its operating expenses and the equipment necessary to carry out its anticipated and actual contractual obligations and that Kotthoff and Debolin fraudulently induced Cloud to provide both, at considerable cost to Cloud, for their personal benefit.

These allegations give rise to the plausible inference that Kotthoff or Debolin, or both, so dominated MIGO that "it had independence in form only" and that it "was used as a subterfuge to . . . perpetrate a fraud." *Fletcher* §41.30; see *Dep't de Asuntos del Consumidor*, 132 P.R. Dec. at 928 n.3 (citing *Fletcher* §§41.10, 41.35 & 41.72). Therefore, the motion to dismiss Cloud's third claim for relief as asserted against Kotthoff and Debolin is denied.

C

The MIGO defendants move to dismiss the second amended complaint's fifth claim for relief, in which Cloud asserts that Kotthoff and Debolin are liable to it under the doctrine of *culpa in contrahendo*. Under this doctrine, a party may be subject to "liability arising from the unjustified termination of preliminary agreements" or "arbitrary interruption of negotiations . . . . on grounds similar to those applied by civil law . . . through the legal institutions of 'promissory estoppel' and 'negligent

misrepresentation.'" *Prods. Tommy Muñiz, Inc. v. Comité Org. de los VIII Juegos Panamericanos*, 13 P.R. Offic. Trans. 664, 676 & 680 (1982) (citations omitted) (citing *Hoffman v. Red Owl Stores, Inc.*, 133 N.W.2d 267 (Wis. 1965); *Chrysler Corp. v. Quimby*, 144 A.2d 123 (Del. 1958); *Guilbert v. Phillips Petroleum Co.*, 503 F.2d 587 (6th Cir. 1974)); see also P.R. Laws Ann. tit. 31, §5141 (providing—in subtitle 4, "Obligations and Contracts", part XVI, "Obligations Contracted Without Agreement", chapter 393, "Obligations Which Arise Due to Fault or Negligence"—that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done").

With respect to the doctrine of *culpa in contrahendo*, the second amended complaint alleges that Kotthoff's and Debolin's "wrongful" and "negligent acts" (1) "were done in their capacity as directors and/or officers of MIGO"; (2) kept Cloud under the belief that MIGO had contractual agreements with Synergy for debris cleanup with [various municipalities in Puerto Rico] following the aftermath of Hurricane Maria, which induced Cloud to continue working"; and (3) "caused Cloud to incur expenses for the completion of the cleanup and debris removal work performed." ECF No. 64, at 36, ¶139.

Construing the complaint's allegations generously, the court accepts as true, for present purposes, the following: Kotthoff and Debolin fraudulently represented that numerous cleanup contracts with municipalities in Puerto Rico were either in place or soon would be and that Cloud would provide the services and equipment required by those contracts pursuant to one or more subcontracts and be compensated or reimbursed accordingly. Cloud, to its detriment, incurred expenses, performed services, and deployed equipment in reliance on Kotthoff's and Debolin's representations but was never reimbursed or compensated as it should have been because many of the contracts that Kotthoff and Debolin described were not in place and never materialized.

The MIGO defendants argue that these allegations are insufficient to state a claim for liability under the doctrine of *culpa in contrahendo*, as they do not give rise to a reasonable inference that either Kotthoff or Debolin unreasonably or arbitrarily withdrew MIGO from negotiations with Cloud. To the contrary, the MIGO defendants assert, Cloud and MIGO (acting through Kotthoff and Debolin) completed their negotiations and executed all of the contracts they meant to sign.

Cloud responds that "the claim is based on the various promises and false representations made in respect of debris cleanup contracts" between MIGO or Synergy—or ECO IQ LLC, which MIGO and Synergy own—and certain municipalities in Puerto Rico "that never materialized." ECF No. 86, at 27. Cloud argues that, under the doctrine of *culpa in contrahendo*, a would-be third-party beneficiary to an unconsummated agreement may recover damages resulting from the "unjustified or arbitrary interruption of negotiations" by one of the parties to the intended agreement. See *Tommy Muñiz*, 13 P.R. Offic. Trans. at 680. Cloud has not shown that the doctrine's scope is sufficiently broad to allow Cloud to recover based on agreements that MIGO, Synergy, or any other entity allegedly failed to consummate for debris removal in certain municipalities. The doctrine seems not to have been conceived to afford a remedy to parties not involved directly in the failed transaction. See Friedrich Kessler & Edith Fine, *Culpa in Contrahendo, Bargaining in Good Faith, and Freedom of Contract*, 77 Harv. L. Rev. 401, 401 (1964) ("The doctrine . . . goes back to a famous article by Jhering, published in 1861 . . . . It advanced the thesis that damages should be recoverable against the party whose blameworthy conduct during negotiations for a contract brought about its invalidity or prevented its perfection."). And Cloud cites no case in which the doctrine was applied other than between parties that directly negotiated but failed to execute a contract. See, e.g., *Tommy Muñiz*, 13 P.R. Offic. Trans. 664.

Even if Cloud is right about the doctrine's scope, the second amended complaint does not allege facts giving rise to a plausible inference that either Kotthoff or Debolin is liable under it. The complaint alleges that Cloud was induced to act to its detriment by Kotthoff and Debolin, who represented that contracts for debris cleanup were in place or soon would be when such contracts may not have existed or been forthcoming; it does not allege that Kotthoff or Debolin, by their misconduct, interrupted the negotiation of any such contracts, rendering them invalid or preventing their execution.

The relevant facts may give rise to plausible claims for fraud and promissory estoppel—as the MIGO defendants, in part, implicitly concede by not seeking dismissal under Rule 12(b)(6) of Cloud's eleventh claim for relief, for promissory estoppel, based on substantially the same facts. They do not, however, give rise to a plausible claim against Kotthoff and Debolin under the doctrine of *culpa in contrahendo*. Accordingly, the MIGO defendants' motion to dismiss Cloud's fifth claim for relief against Kotthoff and Debolin is granted, and that claim is dismissed.

**D**

The MIGO defendants move to dismiss the second amended complaint's sixth claim for relief, for fraudulent misrepresentation against Kotthoff and Debolin, arguing that Kotthoff and Debolin made any alleged misrepresentations as officers of MIGO, not as individuals. The MIGO defendants explain that, under Puerto Rico law, an individual does not become a party to a contract that he executes on behalf of a corporation as an officer of the corporation and cannot be held personally liable for breaches of the contract. So what? The rule on which the MIGO defendants rely is one of *contract* liability; it has no bearing on whether the second amended complaint plausibly alleges that Kotthoff and Debolin are liable to Cloud for *fraud*, a tort, as asserted in the complaint's sixth claim for relief.

For the reasons discussed above, the second amended complaint plausibly alleges that Kotthoff and Debolin are liable to Cloud for fraud. If they used MIGO as a

mere instrumentality to perpetrate a fraud, as the complaint plausibly alleges, they are liable on Cloud's claims against MIGO by way of piercing the corporate veil. If not, they may still be liable for fraud, "for it is settled that a corporate officer who commits a tort is personally liable for his actions and cannot seek refuge in the fact that he was acting for the corporation." *Bond Leather Co. v. Q.T. Shoe Mfg. Co., Inc.*, 764 F.2d 928, 938 (1st Cir. 1985); see also *Wadsworth, Inc. v. Schwarz-Nin*, 951 F. Supp. 314, 319–20 (D.P.R. 1996) ("[W]hen an officer is accused of committing a tort, even if in her capacity as a corporate officer, the doctrine of piercing may not even be implicated."). Accordingly, the MIGO defendants' motion to dismiss the complaint's sixth claim for relief, for fraud, is denied.

E

The MIGO defendants move to dismiss the second amended complaint's first claim for relief, seeking turnover of property of the estate under 11 U.S.C. §542(b). Section 542(b) provides that, subject to certain inapplicable exceptions, "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee". Under the circumstances, Cloud, as the debtor in possession in the underlying chapter 11 case, has the rights and powers of a trustee under §542(b). See 11 U.S.C. §1107(a).

As relevant to the first claim for relief, the second amended complaint alleges as follows: "Between November 24, 2017, and March 30, 2018, Cloud loaned $4,659,570 to MIGO", which the parties memorialized "in a Convertible Promissory Note . . . in April 2018". ECF No. 64, at 25, ¶¶80–81. "The Note had a conversion feature which at maturity allowed Cloud to elect to become a partial owner of MIGO in lieu of repayment." *Id.* at 26, ¶84. When the loan matured in April 2019, Cloud sought repayment, rather than partial ownership, and "made appropriate demand for repayment from MIGO pursuant to the terms of the Note", but "MIGO has failed to make any payments under the Note." *Id.* ¶¶84–85.

The MIGO defendants contend that Cloud is attempting to use §542 improperly to liquidate a contract dispute or "to compel the turnover of assets or property with a disputed title." See ECF No. 79, at 3, ¶3 (citing *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991); *Charter Crude Oil Co. v. Exxon Co., U.S.A. (In re Charter Co.)*, 913 F.2d 1575, 1579 (11th Cir. 1990)).

The MIGO defendants are right about the scope of §542(b), but wrong to assert that Cloud's claim does not fall within its scope. *Collier on Bankruptcy* explains why:

> Courts generally agree that the turnover provisions of section 542 cannot be used to liquidate contract disputes or to compel the turnover of assets or property with a disputed title. **However, an action may be a turnover proceeding even if the defendant disputes the validity or existence of the debt, as long as the . . . "allegations state the existence of a mature debt."** Section 542(b) "contains no requirement that the debt be undisputed or liquidated."

5 *Collier on Bankruptcy* ¶542.04 (Richard Levin & Henry J. Sommer eds., 16th ed. 2020) (emphasis added) (footnotes omitted) (quoting *Kids World of Am., Inc. v. Georgia (In re Kids World of Am., Inc.)*, 349 B.R. 152, 163 (Bankr. W.D. Ky. 2006); *Commercial Fin. Servs., Inc. v. Bartmann (In re Commercial Fin. Servs., Inc.)*, 251 B.R. 414, 423 (Bankr. N.D. Okla. 2000)); see also *Pardo v. Pacificare of Tex., Inc. (In re APF Co.)*, 264 B.R. 344, 356 (Bankr. D. Del. 2001) ("That a party owing an account may assert a valid defense to payment of the debt is contemplated in § 542(b) and does not require a holding that the debt is not matured.").

The second amended complaint plausibly alleges that MIGO owes Cloud a matured debt, which is sufficient to state a turnover claim under §542(b), notwithstanding any valid defenses MIGO has to payment of that debt. Accordingly, the MIGO defendants' motion to dismiss the complaint's first claim for relief, under §542(b), is denied.

## II

The MIGO defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(7), made applicable here by Federal Rule of Bankruptcy Procedure 7012(b), for failure to join a party as required by Federal Rule of Civil Procedure 19. Rule 19(a)(1) requires the joinder of a party under specific, limited circumstances. The MIGO defendants cite no particular provisions of Rule 19, however, and they have not explained why that rule requires the joinder of any particular party who has not yet been joined. This argument for dismissal is waived as "[p]erfunctory and undeveloped" and "unsupported by legal authority". *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017).

## III

The MIGO defendants move for abstention under 28 U.S.C. §1334(c)(2), which requires the court, "[u]pon timely motion of a party", to "abstain from hearing" a proceeding "based upon a State law claim or State law cause of action," if, among other things, there would be no basis for federal subject-matter jurisdiction of the claim or cause of action were the proceeding not "related to a case under title 11". Aside from its §542(b) claim, Cloud asserts only state law claims in this proceeding, see ECF No. 64, at 30–42, and the MIGO defendants timely moved for abstention, see ECF No. 11. But the court need not abstain from hearing this proceeding because there would likely be a basis for federal subject-matter jurisdiction—specifically diversity jurisdiction under 28 U.S.C. §1332(a)—even if the proceeding were not related to a bankruptcy case.

Section 1332(a) provides that U.S. district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States", including "the Commonwealth of Puerto Rico". §1332(a)(1) & (e). The MIGO defendants do not dispute that the amount in controversy here exceeds $75,000, and the parties are likely citizens of different States for purposes of §1332(a). Cloud's only member, Jason Neilitz, provided a declaration

indicating that he has resided only in Wisconsin, meaning that he is a citizen of Wisconsin for purposes of §1332, and so too is Cloud. See ECF No. 89-1; see also *Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003) ("[L]imited liability companies are citizens of every state of which any member is a citizen."). The allegations in the amended complaint, Cloud's supplemental memorandum, and public records suggest that each of the named defendants is a citizen of Puerto Rico, except for perhaps Alan Debolin, who may instead be a citizen of another state (e.g., Missouri), but not a citizen of Wisconsin.

The MIGO defendants contest none of these jurisdictional facts. In requesting mandatory abstention under §1334(c)(2), they have not pointed to anything suggesting that jurisdiction would not exist absent Cloud's bankruptcy case. They base their abstention motion on three arguments:

> (1) Contracts related to all allegations are subject to a forum selection clause; (2) the claims are already pending at the Commonwealth of Puerto Rico and, (3) the schedules and public records ascertain that events were carried out in Puerto Rico as nerve center, depriving [sic] any potential of diversity jurisdiction.

ECF No. 79, at 12, ¶54.

The first and second of these arguments are inapposite: A forum-selection clause may impact venue, but not jurisdiction. See *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013) ("Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' . . . , the clause may be enforced through a motion to transfer [venue] . . . ."). And, absent "exceptional" circumstances, which the MIGO defendants do not identify here, "the pendency of an action in [a] state court is no bar to proceedings concerning the same matter in [a] Federal court having jurisdiction". *Colo. River Water Conservation Dist. v. United States*,

424 U.S. 800, 817–18 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)), quoted in *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013).

The MIGO defendants' third and final argument with respect to jurisdiction (that Puerto Rico was the "nerve center" of the events that are the subject of this proceeding) is based on a faulty understanding of the citizenship of a limited liability company for purposes of diversity jurisdiction. For purposes of federal diversity jurisdiction, a corporation is generally considered to be a citizen of (1) the state in which it was incorporated and (2) the state "where it has its principal place of business". §1332(c)(1). "[T]he phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities. . . . the corporation's 'nerve center.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010) (citing *Wis. Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986); *Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862, 865 (S.D.N.Y. 1959)). This analysis does not apply to limited liability companies, however, and the location of the "nerve center" of an LLC does not determine its citizenship. "[L]imited liability companies are citizens of every state of which any member is a citizen" and only those states. *Belleville Catering Co.*, 350 F.3d at 692.

Courts generally agree that the party moving for mandatory abstention under §1334(c)(2) has the burden to prove that abstention is required. See, e.g., *N.Y.C. Emps.' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Secs. Litig.)*, 293 B.R. 308, 331 (S.D.N.Y. 2003) ("A party is not entitled to mandatory abstention if it fails to prove any *one* of the statutory requirements."). But see *Core Litig. Tr. v. Apollo Glob. Mgmt. LLC (In re AOG Entm't, Inc.)*, 569 B.R. 563, 573 (Bankr. S.D.N.Y. 2017) ("[T]he Defendants bear the burden of proving that mandatory abstention is not warranted."). Whether the MIGO defendants have the ultimate burden of proof, though, they at least bear the initial burden of showing that there is a basis for their abstention motion. See *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 832 & n.6 (8th Cir. 2016) ("Generally, the proponent of a motion bears the

initial burden of showing that the motion should be granted."). The MIGO defendants have not satisfied that burden here, so the motion is denied.

IV

The MIGO defendants move to dismiss multiple claims based on forum-selection clauses in two contracts between Cloud and MIGO.

One of these clauses, in a convertible note purchase agreement, is not a forum-selection clause at all, but is instead a waiver by both parties of their right to contest that the commonwealth and federal courts in San Juan, Puerto Rico, have personal jurisdiction over them with respect to any actions or proceedings arising from or related to that agreement. See ECF No. 79-3, at 4, §10 ("Each of the Company [MIGO] and the Purchaser [Cloud] irrevocably submits to the jurisdiction of any Commonwealth or Federal Court located in San Juan, Puerto Rico, over any suit, action, or proceeding arising out of or relating to the Closing Documents."). The note itself similarly provides, with respect to any actions or proceedings arising from it, that MIGO will not contest personal jurisdiction in the state and federal courts in New York, New York. See *id.* at 34, §9. And both the purchase agreement and the note provide that the parties will not object to any specified court as an appropriate venue for any such action or proceeding. See *id.* at 4, §10, & 34, §9. None of these provisions preclude either party from seeking relief in this court as to the purchase agreement or the note.

The other contractual provision on which the MIGO defendants rely is in an agreement between MIGO and Cloud dated March 7, 2018, concerning Cloud's provision of debris removal services as a subcontractor. That agreement provides that the parties must attempt to resolve any disputes between them as to payment for any such services performed by Cloud under the agreement first through negotiation, then through mediation, then through arbitration, and finally by submitting "[a]ny dispute that requires Court intervention . . . to the Court of First Instance of the Commonwealth [of Puerto Rico]." See ECF No. 79-2, at 8–9, §15.4.1; see also *id.* at 1, §1.3 ("The term

'Commonwealth' means the Commonwealth of Puerto Rico."). This is a forum-selection clause requiring that Cloud and MIGO bring, in the specified court only, any payment dispute arising from their March 2018 agreement that the parties are unable to resolve.

This clause, though, has limited applicability. For example, the MIGO defendants have not shown that the clause applies to Cloud's claims against individuals and entities other than MIGO, including Kotthoff and Debolin, who are not parties to the March 2018 agreement. Similarly, the MIGO defendants have not shown that the clause applies to Cloud's claims other than for breach of the payment provisions of the March 2018 agreement, including Cloud's claims for fraud and promissory estoppel. Finally, the MIGO defendants have not shown that the clause applies to Cloud's claim against MIGO for breach of contract to the extent that the claim arises from MIGO's alleged failure to pay for services not governed by the March 2018 agreement, including debris-removal services Cloud performed in Ponce, Puerto Rico, before it was executed.

The forum-selection clause in the March 2018 agreement between Cloud and MIGO appears to apply only to Cloud's claim against MIGO for breach of that agreement to the extent it required MIGO to pay Cloud for debris removal services Cloud performed in Yauco, Aguadilla, and Morovis, Puerto Rico, during and after March 2018, for which Cloud seeks damages of a little more than $2 million. "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum [like this one] is through the doctrine of *forum non conveniens*", under which "the traditional remedy [is] outright dismissal". *Atl. Marine*, 134 S. Ct. at 580.

If a defendant seeks dismissal based on a "valid forum-selection clause . . . . , the plaintiff's choice of forum merits no weight" and the court "should not consider arguments about the parties' private interests." *Id.* at 581–82 & 583 n.8. The court "may consider arguments about public-interest factors", however. *Id.* at 582. In the context of a bankruptcy case, a relevant public-interest factor may be whether dismissal would help "to secure a prompt and effectual administration and settlement of the estate of

[the] bankrupt[] within a limited period", which the Supreme Court has "long recognized [as] a chief purpose of the bankruptcy laws". See *Katchen v. Landy*, 382 U.S. 323, 328–29 (1966) (quoting *Ex parte Christy*, 44 (3 How.) 292, 312 (1844)). This purpose is best served "through orderly and centralized liquidation or through reorganization or rehabilitation" in a single case, and any necessary, related proceedings, before a bankruptcy court, rather than through piecemeal litigation in multiple courts, the very thing a bankruptcy case is meant to replace. See 1 *Collier on Bankruptcy* ¶1.01; see also Fed. R. Bankr. P. 1001 (requiring that the Federal Rules of Bankruptcy Procedure "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding.").

Having considered the relevant factors, the court will not transfer this proceeding based on the forum-selection clause in the March 2018 agreement between Cloud and MIGO. The clause applies to a portion of the claims that Cloud asserts in this proceeding, all of which arise from the same facts or a common series of operative facts. Consequently, the most expeditious and inexpensive way to adjudicate Cloud's claims is to adjudicate them together in a single proceeding. This best serves the public's interest by ensuring an orderly and centralized administration of the bankruptcy estate, which, at least in this case, is not outweighed by the parties' limited private interest in litigating a few of Cloud's claims in their agreed-to forum.

For these reasons, the MIGO defendants' motion to dismiss several of Cloud's claims based on the forum-selection clause in its March 2018 agreement with Cloud (or any other purported forum-selection clause) is denied.

V

Synergy and the MIGO defendants move to transfer the proceeding to the United States District Court for the District of Puerto Rico, describing it as "the most appropriate forum for adjudication of Cloud's claims." ECF No. 68, at 2. The defendants cite 28 U.S.C. §§1404 & 1412 and Federal Rule of Bankruptcy Procedure 7087, which

provides that "the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412".

Synergy notes a split among federal courts as to whether and when §1404, as opposed to §1412, governs the transfer of an adversary proceeding. Section 1412 provides for the transfer of "a case or proceeding under title 11 to a district court for another district", leading some courts to conclude that it only applies, in the parlance of bankruptcy jurisdiction, to "proceedings arising under title 11", and not to proceedings merely "arising in or related to cases under title 11". See 28 U.S.C. §1334(b); see also *Collier on Bankruptcy* ¶4.05[2] n.12. Section 1404 provides, more broadly, for the transfer of "any civil action", but, more narrowly, that transfer may only be to a "district . . . where [the action] might have been brought or . . . to which all parties have consented." §1404(a). Here, no one disputes that Cloud could have asserted its claims by bringing a civil action in the District of Puerto Rico. And, whether §1404 or §1412 governs, the relevant inquiry at this stage of the proceeding is whether transfer is "in the interest of justice or for the convenience of the parties." §1412; see also §1404(a).

Synergy asserts that the District of Puerto Rico "is the jurisdiction in which all relevant events took place and all of the witnesses and evidence are located"; "[i]f those witnesses are made available pursuant to the District of Puerto Rico's subpoena power, all parties will benefit"; and "all claims will require the application of Puerto Rico law, which is best left to a Puerto Rico court." ECF No. 68, at 2–3. To the extent relevant, the MIGO defendants make substantially the same arguments. See ECF No. 79, at 12–15.

As the court stated on the record during a pretrial conference on April 8, 2020, the factors cited in favor of transfer are sound and weigh heavily in favor of transfer if this action eventually proceeds to trial. See ECF No. 99. Until then, however, for reasons already discussed, it is in the interest of justice for this court to secure the orderly and centralized administration and provide continuing oversight of the bankruptcy estate. Specifically, this court is best positioned to ensure that discovery is "proportional to the

needs of the case, considering the importance of the issues at stake in the action" and other relevant factors, especially those unique to a bankruptcy case under chapter 11. See Fed. R. Civ. P. 26(b)(1); Fed. R. Bankr. P. 7026 (applying Fed. R. Civ. P. 26 in adversary proceedings); 1 *Collier on Bankruptcy* ¶1.01[1] ("Purposes of Bankruptcy").

Accordingly, the defendants' motions for a change of venue are denied without prejudice to any party seeking transfer to the District of Puerto Rico if and when this proceeding is ready for trial.

## VI

For the reasons stated above, IT IS ORDERED that Synergy's and the MIGO defendants' motions to dismiss, abstain, and transfer venue are granted to the following limited extent only and otherwise denied:

1. The third claim for relief is dismissed as to Synergy without leave to replead.

2. The fifth claim for relief against Kotthoff and Debolin is dismissed without leave to replead.

#####